UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOSHUA BERNEL URTECHO MARTINEZ,

Petitioner,

v.

MARKWAYNE MULLIN, et al.,

Respondents.

Case No. C26-2674-SKV

ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS

Petitioner is currently detained by U.S. Customs and Immigration Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. He filed, through counsel, this 28 U.S.C. § 2241 habeas action challenging his immigration detention as unconstitutional under the Fifth Amendment. *See generally* Dkt. 1. Respondents filed a return, Dkt. 5, together with sworn declarations from U.S. Department of Homeland Security ("DHS") Deportation Officer Ian Bloom, Dkt. 6, and their counsel Peter Clark, Dkt. 7. Petitioner filed a traverse in reply, Dkt. 8.

Having reviewed the parties' submissions and the governing law, the Court GRANTS in part the petition (Dkt. 1) for the reasons set forth below.

//

## I. BACKGROUND

Petitioner is a citizen of Nicaragua and applied for admission to the United States on May 20, 2023, at the Miami International Airport. Bloom Decl., ¶¶ 3-4. He was thereafter paroled into the United States under the Nicaraguan Humanitarian Parole Program, the terms of which were set to automatically expire on May 18, 2025. *Id.* ¶ 4; *see* Dkt. 7-2.

The record is silent regarding the circumstances of Petitioner's parole expiration and whether Respondents sought Petitioner's return to custody or otherwise took any action on May 18, 2025. It appears that Petitioner remained released and lived in Albuquerque, New Mexico until the events that ultimately led to his detention at issue here. Dkt. 1, ¶ 30.

On May 10, 2026, Montana Highway Patrol "encountered" Petitioner during a traffic stop near Wolf Point, Montana and "verified that Petitioner was illegally present in the United States." Bloom Decl., ¶ 5. Montana Highway Patrol "requested assistance" from DHS, who in turn arrested Petitioner. *Id.* ¶ 6; *see* Dkt. 7-1 at 4. On May 11, 2026, DHS served Petitioner with a warrant and notice of custody determination. Bloom Decl., ¶ 7; *see* Dkts. 7-3, 7-4. The notice of custody determination form indicates ICE determined that Petitioner would be held in detention pending a final administrative determination of his immigration case. Dkt. 7-4 at 2. It also indicates that Petitioner requested an immigration judge review that custody determination. *Id.* However, Officer Bloom states in his declaration that "[t]here is no record that Petitioner requested a custody redetermination hearing from ICE or the Immigration Court." Bloom Decl., ¶ 14.

On May 14, 2026, Petitioner was issued a Notice to Appear ("NTA") charging him with removability under the Immigration and Nationality Act ("INA"). Bloom Decl., ¶¶ 8-9; *see* Dkt.

7-5. On May 19, 2026, Petitioner was transferred to the NWIPC, where he has since remained detained. Bloom Decl., ¶ 11.

On June 28, 2026, Petitioner filed an application for asylum and withholding of removal, the merits of which are scheduled to be heard on September 11, 2026. *Id.* ¶ 13.

On July 29, 2026, Petitioner filed the instant petition, asserting his immigration detention violates his due process rights under the Fifth Amendment.[1] Dkt. 1 at 8.

## II. LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). A habeas petitioner must prove by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States[.]" *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

## III. DISCUSSION

Respondents contend Petitioner is mandatorily detained under 8 U.S.C. § 1225(b)(1) due to his humanitarian parole terminating. Dkt. 5 at 1. Separately, Respondents assert that Petitioner's redetention complied with *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976), and that his current three-month detention falls "short of the prolonged detention standard" when analyzed under *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1117-18 (W.D. Wash. 2019). *Id.* at 7-11. Accordingly, Respondents argue Petitioner's detention is lawful and comports with due process. *Id.* at 6-11.

---

[1] The Court expects habeas petitioners, particularly those who are represented, to comply with pleading standards. Local Civil Rule 100(a) requires habeas petitions to "use or substantially follow this district's forms, which are available on the court's website." LCR 100(a). The instant petition lacks clearly delineated grounds for relief. *See generally* Dkt. 1. While the Court finds the petition contains sufficient facts to consider claims implied within, which appear fully addressed by Respondents, the Court expects individual claims to be clearly articulated.

**A. Statutory Detention Authority**

Petitioner does not discuss the various statutory regimes governing immigration detention generally, or identify which statute governs his current detention—an important omission in a habeas petition challenging his individual detention as unlawful and primarily seeking a bond hearing. *See Jennings v. Rodriguez*, 583 U.S. 281, 297, 306 (acknowledging neither § 1225(b)(1) nor 1225(b)(2) "says anything whatsoever about bond hearings" while those "detained under § 1226(a) receive bond hearings at the outset of detention"); *see also Prieto-Romero v. Clark*, 534 F.3rd 1053, 1057 (9th Cir. 2008) ("To determine whether Congress has authorized [] detention, we must first identify the statutory provision that purports to confer such authority on the Attorney General."). Instead, it appears Petitioner asserts that due process entitles him to a bond hearing, regardless of the statute authorizing his detention. *See* Dkt. 1, ¶¶ 9, 14, 39-55.

As noted, Respondents contend Petitioner is subject to mandatory detention under § 1225(b)(1). Dkt. 5 at 6-7. Section 1225 authorizes the government to detain certain noncitizens seeking admission into the United States. *See Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). Section 1225(b)(1) applies to noncitizens who are "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation" and are "normally ordered removed 'without further hearing or review' pursuant to an expedited removal process." *Id.* (citing § 1225(b)(1)(A)(i)).

Noncitizens detained under § 1225(b)(1) may be temporarily released on humanitarian parole. *See Jennings*¸ 583 U.S. at 288; 8 U.S.C. § 1182(d)(5)(A). Section 1182 provides that parole may be granted "only on a case-by-case basis for urgent humanitarian reasons or

significant public benefit" and the noncitizen must "present neither a security risk nor a risk of absconding." 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. 212.5(b).

Parole terminates automatically upon a noncitizen's departure from the United States or, if the noncitizen has not departed, "at the expiration of the time for which parole was authorized." 8 C.F.R. § 212.5(e)(1). No written notice is required for automatic termination. *Id*. Parole may also be terminated on notice, "upon accomplishment of the purpose for which parole was authorized," or when a DHS official with authority decides that "neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States." 8 C.F.R. § 212.5(e)(2)(i). Written notice must be provided to the noncitizen when termination is based on the reasons set forth in § 212.5(e)(2)(i). Upon termination of parole, the noncitizen is "restored to the status . . . had at the time of parole" and "thereafter [their] case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *See Jennings*, 583 U.S. at 288; *see also* 8 C.F.R. §§ 212.5(e)(1), (e)(2)(i); 8 U.S.C. § 1182(d)(5)(A).

Respondents appear to argue that, under the statutory parole framework, Petitioner is lawfully detained under § 1225(b)(1) because he was released on humanitarian parole immediately after an encounter at the border, and that parole was subsequently "terminated, by notice, when he was issued an NTA in accordance with § 212.5(e)(2)(i)." Dkt. 5 at 7. Thus, his status was "restored" to that in place at the time of his parole, which, according to Respondents, "was an arriving [noncitizen] at the Miami Airport" subject to mandatory detention. *Id.*

However, as Petitioner points out, Respondents' position regarding his parole's termination is inconsistent and in conflict with the governing regulations. Dkt. 8 at 4. On one hand, Respondents contend that Petitioner's parole automatically terminated upon its May 2025

expiration date, *see* Dkt. 5 at 4 (citing 8 C.F.R. § 212.5(e)(1)), but they also argue it terminated when he was issued an NTA on May 14, 2026, *see id.* at 7. If, as Respondents contend, Petitioner's parole terminated upon the issuance of the May 14, 2026, NTA, the applicable regulation required "accomplishment of the purpose for which parole was authorized" or a designated official's opinion that "neither humanitarian reasons nor public benefit warrants the [noncitizen's] continued presence[.]" 8 C.F.R. § 212.5 (e)(2)(i). To the extent any of that process occurred, evidence of that process is not before the Court. *See Nava v. Mullin*, C26-02324-TLF, 2026 WL 2294576, at *3 (W.D. Wash. Aug. 10, 2026).

Separately, the arrest, custody determination, and charging documents served on Petitioner after his redetention undermine Respondents' § 1225(b)(1) classification here. First, ICE took Petitioner into custody on a Warrant for Arrest of Alien, a procedural mechanism expressly authorized by Section 236 of the INA, which is codified at 8 U.S.C. § 1226. Dkt. 7-3 at 2; *see also Rodriguez Vazquez v. Bostock*, 2026 WL 2196424, at *10 (9th Cir. July 30, 2026) (pointing out the fact that § 1226(a) provided the authority for the government to detain noncitizens upon the issuance of a warrant showed plaintiffs "[were] at least facially subject to detention under § 1226(a)"). Further, the custody determination form served on May 11, 2026, was similarly issued under the authority of Section 236 of the INA and appears to recognize Petitioner's eligibility for discretionary release on bond. *See* Dkt. 7-4 at 2. Finally, the May 13, 2026, NTA—which Respondents contend is the operative charging document for his expedited removal under § 1225(b)(1)—charges Petitioner, *inter alia*, with being "present in the United States without being admitted or paroled" under INA § 212(a)(6)(A)(i). Dkt. 7-5 at 5. *But see* 8 C.F.R. § 235.3(b)(3) ("In the expedited removal process, the Service may not charge an [noncitizen] with any additional grounds of inadmissibility other than section 212(a)(6)(C) or

212(a)(7) of the Act."). Respondents do not explain how Petitioner can be subject to expedited removal under § 1225(b)(1) while simultaneously charged under a disqualifying section of the INA. *See generally* Dkt. 5.

Considering these discrepancies, the record does not definitively establish Petitioner's current detention is pursuant to § 1225(b), as Respondents contend. Thus, to the extent Respondents seek to justify Petitioner's detention solely on it being mandatory under § 1225(b) because he was released on humanitarian parole in 2023, that position is undermined by DHS's own administrative records and the charging document identified above.

The Court need not decide what statute governs Petitioner's detention. Separate from any purported statutory basis, the Government remained "obligat[ed] to effectuate [Petitioner's] detention in a manner that comport[ed] with due process." *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1315, 1322 (W.D. Wash. 2025). Petitioner argues Respondents failed to do just that. Dkt. 1 at 8-9.

**B. *Mathews* and Due Process**

Due process rights extend "to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' . . . interests within the meaning of the Due Process Clause of the Fifth . . . Amendment." *Mathews*, 424 U.S. at 332. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

The *Mathews* test balances three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and

> the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

Courts in this District apply the *Mathews* framework in cases challenging the lawfulness of a noncitizen's redetention. *See, e.g., E.A. T.-B.*, 795 F. Supp. 3d at 1321 n.4 (W.D. Wash. 2025) (collecting cases employing the *Mathews* factors in similar immigration contexts). Consistent with this authority, the Court agrees the *Mathews* test is applicable here and it will therefore address the three factors below.

First, courts in this district have consistently concluded that individuals such as Petitioner—who have been released on parole under § 1182(d)(5)(A) and have lived with relative freedom in the United States for several years—have a protected liberty interest in not being redetained. *See Dieng v. Hermosillo*, 2026 WL 411857, at *3-5 (W.D. Wash. Feb. 13, 2026); *Torres v. Hermosillo*, 2026 WL 145715, at * 3-5 (W.D. Wash. Jan. 20, 2026); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. Sept. 12, 2025). District courts in the Ninth Circuit have also recognized that a "petitioner's liberty interest [does] not expire along with his parole." *Quiroga-Chaparro v. Warden of the Golden State Annex. Det. Facility*, 2025 WL 3771473, at *5 (E.D. Cal. Dec. 31, 2025); *see also G. G. v. Kaiser*, 2025 WL 3254999, at *6 (E.D. Cal. Nov. 22, 2025); *Ramirez Tesara*, 800 F. Supp. 3d at 1136-37. The record shows Petitioner had been released on parole and living in the United States for several years prior to his arrest and redetention. This factor weighs in favor of Petitioner.

As for the second *Mathews* factor, Respondents contend "Petitioner's lowered expectations of a liberty interest while on parole do not create the same concerns of [an] erroneous deprivation." Dkt. 5 at 8. Respondents further assert that ICE's compliance with

revocation regulations also supports finding the risk of error low. *Id.* at 8-9. The Court is unpersuaded because neither of those assertions are accurate. As discussed above, even if Petitioner is detained under § 1225(b), the Court does not find Petitioner had a reduced liberty interest simply because he was paroled, rather than released on his recognizance or supervision—particularly considering the record lacks any evidence the Government sought Petitioner's return to custody after his parole's expiration date, but instead acquiesced in his continued release for nearly one year. More importantly, the record shows Respondents *failed* to comply with regulations governing revocation. *See supra*, Part A. And crediting Respondents' assertion that the NTA revoked Petitioner's parole, Petitioner was apparently redetained, with no notice or process, *days before* his parole was actually revoked. Providing pre-deprivation process, through notice and an opportunity to respond, could have addressed or resolved any factual issues regarding Petitioner's parole termination, and minimized the risk that his liberty interest would be erroneously deprived. Accordingly, there was a high risk that Petitioner's redetention without process would be erroneous and that additional safeguards would have been valuable to ensure an erroneous deprivation did not occur. *See Lopez v. Noem*, 2025 WL 3496195, at *5 (D. Md. Dec. 5, 2025) (finding that there was a high risk of erroneous deprivation because "the Government's failure to comply with its own agency regulations necessarily deprive[d] [petitioner] of the procedural process due her, rendering her current detention unlawful"). The second *Mathews* factor favors Petitioner.

Finally, the Government's asserted interests in redetaining Petitioner without process are insufficient. First, Respondents assert the Government has an interest in preventing noncitizens from remaining in the United States in violation of the law. Dkt. 5 at 9. Additionally, Respondents contend they have an interest in enforcing compliance with orders of release and

returning individuals to custody when the original conditions underlying parole no longer warrant that parole." *Id.* (citation omitted). Neither of these interests appear particularly relevant to Petitioner's individual circumstances. Respondents do not allege, for example, that Petitioner violated the terms of his parole or violated any other law beyond his status as a noncitizen—a fact the Government knew at the time he was paroled into the United States over three years ago. Further, the Government's failure to take any action toward returning Petitioner to custody or otherwise seeking his removal after his parole term expired further undermines any suggestion that forgoing pre-deprivation process was necessary, as does their assertion that Petitioner's parole expired upon issuance of the NTA days after his redetention. As for Respondents' second identified interest—returning noncitizens to custody when release is no longer warranted—the Court has already found the record lacks any evidence that the purpose of Petitioner's parole was accomplished or that the requisite official decided "neither humanitarian reasons nor public benefit warrants" Petitioner's continued presence. Respondents do not otherwise explain why Petitioner's release on parole was no longer warranted. And as noted above, DHS's nearly one-year acquiescence after his parole automatically expired is in tension with the interest advanced here. Accordingly, the Court does not find Respondents' asserted interests justified providing no pre-deprivation process. This third factor weighs in Petitioner's favor.

In sum, all three *Mathews* factors weigh in Petitioner's favor. Given the liberty interest at stake, the high risk of erroneous deprivation, and the insufficient governmental interests asserted, providing no pre-deprivation process was constitutionally deficient. Habeas relief is therefore warranted. Consistent with cases in this district, release from custody is the appropriate remedy.

*See Kumar v. Noem*, C26-0294-SKV, 2026 WL 668335, at *5 (W.D. Wash. Mar. 10, 2026); *Nava*, 2026 WL 2294576, at *6.

Because the Court finds Petitioner is entitled to release under *Mathews*, it does not reach Petitioner's prolonged detention claim.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS in part the petition (Dkt. 1) and ORDERS that Petitioner be released from immigration detention within twenty-four (24) hours. Respondents shall file a certification within forty-eight (48) hours that Petitioner has been released. Petitioner's prolonged detention claim is denied as MOOT. Any fee petition shall be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 19th day of August, 2026.

S. KATE VAUGHAN
United States Magistrate Judge